MANION, Circuit Judge,
concurring in part and dissenting in part.
While joining most of the court’s opinion, I write separately to address the four layoffs that were unrelated to animus and *882 to highlight the need for back-pay mitigation.
When the dealership laid off Juan Cazorla, Larry Puzon, David Poppo, and Tumeshwar Persaud, it had a duty to bargain. Yet as we made clear in Sundstrand Heat Transfer, Inc. v. N.L.R.B., 538 F.2d 1257, 1260 (7th Cir.1976), “a full backpay remedy must have been predicated on the assumption that bargaining over the effects of the layoff would have kept the employees on the job.” As the court notes, these four technicians were laid off to ensure that the remaining technicians had enough jobs to be adequately employed.[1] Technicians at this dealership were paid by the job, not by the hour, as is standard in the industry. To keep its skilled technicians from seeking better pay elsewhere, the dealership had to make sure they had enough work. This required distributing the dwindling workload among fewer technicians. The court speculates that the union could have bargained for less work per technician or some other unspecified deal. But in line with the company’s business model, to keep jobs viable in that service center and to meet customer needs, the dealership had to keep its more skilled technicians as fully employed as possible. This is not conjecture: technicians were leaving the dealership for other opportunities, as they saw that the dealership could mot supply enough work per person.
Further, the four technicians who were laid off did not even have the limited skill level that their ratings suggested. The administrative law judge credited the testimony of Alex Aviles, a team-leader technician who said that the four technicians’ lower skill ratings did not even reflect their actual skill. Instead, Aviles testified that the ratings were “a thank you for your seniority,” and the four did not “really have that skill set.” Under Sundstrand, the dealership should not be penalized for attempting to keep as many of the highly skilled technicians as fully employed as possible. Yet now, the dealership is ordered to reinstate Cazorla, Puzon, Pop-po, and Persaud — and they must be restored to seniority ratings that, on the undisputed record, they did not deserve based upon their actual skills. This is a punitive rather than a fair remedy, which should not be fully enforced.
In conclusion, I note the mitigation ordered by the Board provides that the four technicians discussed here, along with the unlawfully discharged Anthony Roberts, are to receive back pay and lost benefits, “less any interim net earnings.” This would probably be a complicated formula that includes medical benefits, any unemployment benefits, part-time work, and possibly comparison with how layoffs were handled after bargaining began. The idea that these technicians would have received full pay if they were retained is dubious, particularly where this court recognizes that there was not enough work to go around when technicians were laid off. Requiring the dealership to pay seven years of back pay also seems too harsh, particularly when this litigation was extended by the Board’s own quorum-related problems discussed in N.L.R.B. v. Noel Canning, — U.S. —, 134 S.Ct. 2550, 189 L.Ed.2d 538 (2014). The dealership should not be penalized for significant delays that it did not create. At the least, however, mitigation for the ordered back-pay remedies will require careful calculation.

. Whether economic conditions were no longer "dire” is debatable. When there is not enough work to go around, some technicians will have to leave.